UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                                                           **DECISION AND ORDER**
                                                                     20-CR-29-A

TORRANCE BAILEY,

                                     Defendant.
_____

        Defendant Torrance Bailey is charged in a 22-count Superseding Indictment (Dkt. No. 24) returned April 16, 2020, along with seven co-defendants, with violating four of those counts, *i.e.*, multi-drug conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), 856(a)(1), and 846 (Count 1); possession of 40 grams or more of fentanyl and 4-ANPP with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Counts 20 and 21); and maintaining a drug premises, in violation of 21 U.S.C. § 856(a)(1) (Count 22).

        At the time the detention hearing was held before Magistrate Judge McCarthy on March 10, 2020, Defendant had been charged in a three-count Criminal Complaint (20-MJ-1012, Dkt. No. 1) with co-defendant Sherron Kye, with conspiracy to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 (Count 1); possession with intent to distribute, and to distribute, 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 2); and maintaining a drug premises, in violation of 21 U.S.C. § 856(a)(1) (Count 3).

        Pursuant to 18 U.S.C. § 3145(b), Defendant appeals (Dkt. No. 28) a detention order of Magistrate Judge Jeremiah J. McCarthy issued orally after a hearing (Dkt. No.

28, pp. 22-44) on March 10, 2020.  The Government submitted a response in opposition (Dkt. No. 44); Defendant filed a reply (Dkt. No. 57); and the U.S. Probation Office submitted a memorandum dated September 30, 2021, with Defendant's Pretrial Services Report of March 9, 2020 attached.  The Court heard oral argument on the bail appeal on October 5, 2021.

Upon *de novo* review of all the circumstances, and for reasons stated below, the Court finds pursuant to 18 U.S.C. § 3142(e) that no conditions of release, or combinations of conditions, will reasonably assure the safety of the community or reasonably assure Defendant's appearances as required.  Accordingly, the Court affirms the March 10, 2020 detention order.

## **BACKGROUND**

As noted above, Defendant was charged in a Criminal Complaint returned on March 6, 2020, with conspiring to possess with intent to distribute 40 grams or more of fentanyl, as well as with possession with intent to distribute 40 grams or more of fentanyl.  Each of those two offenses carries a mandatory-minimum penalty of 5 years, with a maximum term of imprisonment of 40 years.  Defendant was also charged with maintaining a drug premises, which has a 20-year maximum term of imprisonment.  Defendant had an initial appearance and detention hearing before the Magistrate Judge on March 10, 2020.

During the hearing, the Government made a proffer, first explaining the circumstances of March 5, 2020 (which Counts 20, 21, and 22 in the Superseding Indictment now address), when a search warrant was executed at 81 Mills Street, Lower

Apartment, in Buffalo, New York.[1]  Indeed, the factual circumstances as to that date were described in detail in this Court's Decision and Order (Dkt. No. 10) that granted the Government's bail appeal revoking Magistrate Judge McCarthy's authorization of pretrial release of co-defendant Kye, who was also present on March 5, 2020:

> The United States proffered that the charges in the Criminal Complaint arose upon the execution of search warrants for (1) 81 Mills Street, lower rear apartment, Buffalo; (2) a vehicle used by the defendant's alleged co-conspirator, Torrance Bailey; and (3) Bailey's person. The warrants were executed on March 5, 2020 by the Buffalo Police Department and federal agencies. Law enforcement personnel saw Kye and Bailey exit the residence, walking between 81 Mills Street and 79 Mills Street. As law enforcement approached the defendants, Bailey threw a set of keys to the ground, and Kye threw a bag on the ground and attempted to enter a parked vehicle on Mills Street to get away. The bag Kye tried to throw away contained what law enforcement estimated was three ounces (i.e. more than 70 grams, or approximately 740 individual doses) of suspected fentanyl.
>
> The contents of the bag defendant Kye tried to throw away were not field tested due to the danger fentanyl poses to law enforcement. And as of the date of the detention hearing, law enforcement had not yet received laboratory testing results regarding the suspected fentanyl. In reply on this appeal, however, the United States proffered a laboratory report confirming that the substance in the bag contained 99.66 grams of fentanyl and 4-ANPP (4-anilino-N-phenethylpiperidine), both Schedule II controlled substances. Dkt. No. 6-1.
>
> Another 5 ounces of suspected fentanyl was recovered from the lower rear apartment at 81 Mills Street. Approximately $3,600 was seized from Bailey, and according to law enforcement personnel, that amount is consistent with the purchase of approximately 3 ounces of fentanyl. The laboratory testing indicates that the additional suspected fentanyl found in the 81 Mills Street apartment contained 120.04 grams of fentanyl and 4-ANPP. Dkt. No. 6-1. In the apartment, law enforcement also seized packaging materials and presses with suspected fentanyl residue on them. The United States proffers that this evidence circumstantially demonstrates that defendant Kye purchased the fentanyl he

---

[1] The Government stated at the hearing that the 81 Mills Street address "had previously been linked to Torrance Bailey", but no further explanation was given than that.

    possessed from Bailey, and that Kye possessed the fentanyl for distribution, not just personal use.

Dkt. No. 10, pp. 3-4.

    The Government also noted Defendant's ties to David Washington, who had been recently indicted, along with Eleazar Martinez Medina, on February 20, 2020 for an alleged role in a large cocaine-trafficking conspiracy in 20-CR-29-A. As stated above, a 22-count Superseding Indictment (Dkt. No. 24) was returned approximately one month after the March 10, 2020 detention hearing, naming Defendant and seven co-defendants, to include Kye, Washington, and Medina.

    On March 10, 2020, Magistrate Judge McCarthy ordered Defendant detained (Dkt. No. 28, pp. 41-42), without prejudice to Defendant's right to request reconsideration "in the future, particularly in light of whatever [the] test results may . . . be . . . based on what was found in the apartment."[2] Judge McCarthy reasoned that the strength of the evidence against Defendant due to what was found in the apartment was "very compelling"; his response when questioned about his criminal history was inconsistent with his history as documented in the Pretrial Services Report; and there were inconsistencies regarding who Defendant had been residing with and where. As such, Judge McCarthy held that Defendant had failed to rebut the presumption of detention in this case.

## DISCUSSION

    Under the Bail Reform Act of 1984, a criminal defendant awaiting trial must be released on bail unless the defendant presents an unreasonable risk of flight or "will

---

[2] From the reply papers in co-defendant Kye's bail appeal, it is apparent that the testing was positive for controlled substances. *See* 20-MR-88-A, Dkt. No. 6-1.

4

endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). When reviewing a magistrate judge's detention order, the district court performs *de novo* review of that order. *See United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985) (finding that a district court "should not simply defer to the judgment of the [M]agistrate, but [should] reach its own independent conclusion"). When conducting *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence*. See e.g. United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985). The appeal of a magistrate judge's pretrial detention order to this Court is to be "determined promptly." 18 U.S.C. § 3145(b).

The Government has the burden to show by clear and convincing evidence that the danger posed by the defendant cannot be alleviated by any combination of available bail conditions. *See United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985). It also has the burden to show by a preponderance of the evidence a serious risk of flight for which no conditions will reasonably assure the defendant's appearances in court and as otherwise required. *Id.*

In determining whether there are conditions of release that will reasonably assure the safety of the community and a defendant's appearances as required, the Court must consider the factors listed in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or

> alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g) (ellipses supplied).

For serious narcotics offenses, crimes like the Title 21 offenses punishable by a maximum term of ten years' imprisonment or more charged in the Criminal Complaint against Defendant, a finding of probable cause to believe that such an offense was committed, and that the defendant committed it, gives rise to a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3). However, a grand jury indictment alone, such as the Superseding Indictment (Dkt. No. 24) later returned here, establishes probable cause; no independent finding of probable cause by the Court is necessary. *See United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985).

When the § 3142(e) rebuttable presumptions apply, the Government retains the burden of persuasion if it is seeking detention, and "a defendant must introduce some evidence contrary to the presumed fact[s] to rebut the presumption." *United States v. Rodriguez*, 950 F. 2d 85, 88 (quotation omitted) (2d Cir. 1991). "Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant." *Id.* (quotation omitted). The § 3142(e) presumptions,

6

if unrebutted, are alone sufficient to sustain the Government's burdens of proof on danger and serious risk of flight.  *See id.; see also United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014).

On appeal, the defense argues that there are conditions that will reasonably assure the safety of the community and Defendant's appearances as required, and has proposed that Defendant be released to home confinement with electronic monitoring. At oral argument on this bail appeal, the defense acknowledged that circumstances have not changed since the detention hearing and the Magistrate Judge's determination of detention.

In turn, the Government argues that the § 3142(g) factors justify Defendant's continued detention, particularly the strength of the Government's case.  During the oral argument, the Government argued that Defendant has now been charged in the Superseding Indictment with more serious charges, as Defendant is facing 10 years to life imprisonment.  The U.S. Probation Office likewise continues to recommend detention and refers to the Pretrial Services Report, which lists factors that work against Defendant in assessing nonappearance and dangerousness.

In this case, the Court finds that Defendant poses a serious risk of flight and a danger to other persons and the community, and that Defendant has not rebutted the statutory presumption of detention.

Both the nature and circumstances of the offense, and the weight of the evidence supporting the charges relative to March 5, 2020, weigh in favor of detention.

As outlined above, the charges arise at least in part from the allegations of Defendant's role in selling three ounces of fentanyl to co-defendant Kye for distribution.

Contrary to the defense's argument that the strength of the evidence in this case is weak—as there was no proffer regarding surveillance of 81 Mills Street, there were no admissions or DNA evidence, and the fentanyl was hidden inside the apartment, the Court tends to the agree with the Magistrate Judge that the proffered evidence is strong. The defense argues that there was no evidence connecting Defendant to the drugs and drug paraphernalia found inside the house, in other words, no direct evidence. However, the circumstantial evidence is that upon exiting the apartment at 81 Mills Street together with Defendant, co-defendant Kye was observed by law enforcement throwing the bag of almost 100 grams of fentanyl and 4-ANPP to the ground and attempting to flee, while Defendant threw a set of keys to the ground that opened the apartment at 81 Mills Street--where 5 ounces of fentanyl and other drug paraphernalia was recovered.  Moreover, approximately $3,600 was seized from Defendant.  The uncomplicated evidence proffered by the Government tends to show that Defendant possessed the fentanyl with intent to distribute it; that he maintained the premises of the apartment at 81 Mills Street for manufacturing, distributing, and/or using fentanyl and 4-ANPP; that he sold the substance to Kye for distribution; and that Kye attempted to get rid of it while trying to avoid arrest.

In addition, the charges together carry high penalties with a sentence of imprisonment upon potential conviction that is likely to be long, meaning Defendant has a stronger motive to flee.  *See United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007).  If convicted of the possession offenses, alone, Defendant faces a mandatory minimum of 5 years, with a maximum term of imprisonment of 40 years.

The history and characteristics of Defendant weigh both for, and against, pre-trial detention.  However, the Court finds that this factor's scales are tipped in favor of continued detention.

Defendant is a lifelong resident of Buffalo, and the defense points out that he has close family relationships and would continue to reside with his mother if he is released. Defendant allegedly cared for his elderly mother and her boyfriend, who are unable to care for themselves, before his arrest in the instant case.  Defendant also has four children, all who live in Buffalo, and he had custody of them every weekend before his arrest.  According to defense counsel, Defendant has never met his one-year-old son. The defense also argues that Defendant's father and brother "would be willing to assist with the posting of any security ordered by the Court", which means that his close relatives have "faith that he will not reoffend."  Defendant's brother stated for the Pretrial Services Report that he would be willing to assist with bail "depending on the amount."[3]

In his pretrial services interview, however, there was conflicting information about where Defendant had been residing prior to his arrest, and with whom.  He stated that he had been residing with his mother for approximately ten years, while his brother stated he was aware Defendant had been residing alone, at a different address, for about one year before his arrest.

Defendant's employment history is sparse, as he has been unemployed since 2012, and before that he worked as a machine operator for about 2 ½ years, and as a loader with UPS from 2000 to 2003.

---

[3] While it might be that some form of economic security could adequately secure Defendant's appearances as required, the Court finds the bonds would not mitigate the danger to the community.

Defendant reported no physical or mental health issues, but he used crack cocaine on the weekends as recently as 2018.  According to the defense, Defendant graduated from a substance abuse program in 2019.

Regardless of the defense's assertion at oral argument that Defendant is not a career offender, Defendant has an extensive criminal history beginning in 2000 at the age of 18.  Two of the charges as labeled as violent felony offenses, and for one of those two, a domestic incident report was filed.  Defendant's Pretrial Services Report lists at least eight arrests, and convictions to include violations, a couple misdemeanors, and three felony convictions (*i.e.*, attempted criminal possession of a control substance (cocaine), fifth degree [Class E felony], criminal possession of a weapon, second degree: loaded firearm, other than person's home/ business [Class C felony], and attempted criminal possession narcotic drug, fourth degree [Class D felony]).

It is noted in the Report that at the time of his interview, Defendant was asked about his criminal history.  Despite the lengthy criminal history documented in the Report, Defendant admitted he had a prior drug case but asserted he had been arrested for "nothing else."

According to the defense, overall, aside from a non-appearance regarding a 2004 charge (when a bench warrant was issued for Defendant's arrest), Defendant has a good history of appearing in Court.  The defense also highlights that at the time of the charges in this case, Defendant was not under any pending case, including parole or probation supervision.  While this appears accurate, in 2007, Defendant was resentenced to a period of imprisonment due to a violation of probation; in 2014, his parole was revoked; and in 2018 his parole was revoked, and he was readmitted to jail.

With respect to danger to the community, there is substantial evidence that Defendant possessed, and intended to distribute, approximately 740 doses (or more than double that, if you count the additional fentanyl recovered in the apartment at 81 Mills Street) of dangerously potent and destructive fentanyl.  The danger that Defendant poses is the exactly the sort of danger to the community that prompted Congress to enact the presumption that persons charged with serious drug offenses pose a danger while on pretrial supervision.  *See Leon*, 766 F.2d at 81 (danger to the community includes "the harm to society caused by [the significant risk of continued] narcotics trafficking"); *see United States v. Simms*, 2019 U.S. Dist. LEXIS 219677, *19 (N.D. Oh. Dec. 23, 2019) ("The distribution of fentanyl, one of the most deadly illegal drugs on the black market, poses an incredible threat to community members."); *United States v. Brown*, 2017 U.S. Dist. LEXIS 179110, *7-8 (W.D. Pa. Oct. 30, 2017) ("The court is mindful that the distribution of fentanyl, in particular, has recently resulted in serious harm to the community…"); *United States v. Morrison*, 2016 U.S. Dist. LEXIS 178205, *9, 11 (W.D.N.Y. Dec. 23, 2016).

In addition, as mentioned above, Defendant's prior re-arrests while under supervision, and prior probation/ parole revocation, suggests that he may not abide by the conditions of release imposed by this Court.  GPS monitoring while on home incarceration does not prevent someone from making money distributing illegal controlled substances while on pretrial release.

The defense also argues that Defendant should be released because the Chautauqua County Jail, where Defendant has been detained since March 2020, poses a heightened risk of exposure to the virus causing COVID-19; Defendant has lived

through many months of this pandemic while in jail; defense counsels' ability to visit Defendant at the Jail was curtailed because of visitor restrictions; and if Defendant were to be released, Defendant would be better able to prepare his defense.[4]

While the Court is cognizant of the unprecedented risks posed to individuals and the public by the rapidly unfolding pandemic, Defendant described his physical health for his Pretrial Services Report as "wonderful" and denied being under the care of any physician at the time.  There is no allegation that Defendant's physical health has since declined or that he is more vulnerable to serious risks or complications were he to be exposed to the virus than any other inmate.  Moreover, since the advent of vaccines, restrictions and other impediments to in-person visits at local facilities, have generally been curbed.

Last, the defense argued at the oral argument that co-defendants have delayed bringing this case to trial by way of evidentiary hearings, two "leading" co-defendants changing attorneys through the course of the litigation, and co-defendant David Burgin having yet to file an omnibus motion.[5]  In spite of these alleged delays by co-defendants, Defendant continues litigating his own pretrial motions.  Indeed, on October 27, 2021, the Magistrate Judge heard oral argument on Defendant's motion (Dkt. No. 272) to produce *in camera* testimony that led to the issuance of a search warrant for 81 Mills Street, and for a hearing on that issue.  Defendant also has a suppression motion pending (Dkt. No. 186).  As such, the Court need not address this argument any further.

---

[4] A couple provisions of the Bail Reform Act possibly apply here.  *See* 18 U.S.C. §§ 3142(f), (i).

[5] After oral argument was held on this bail appeal, co-defendant Burgin filed his pretrial motions on October 15, 2021.  *See* Dkt. No. 282.

The Court has considered each of the § 3142(g) factors in this case.  After carefully analyzing all the circumstances, the Court finds that Defendant has failed to overcome the presumption that he is a danger to the community or the presumption that he is a flight risk.

On balance, the serious nature of the charges against Defendant and the lengthy period of incarceration he is potentially facing; and the details of Defendant's history and characteristics, especially his lengthy criminal record and problems he has had when previously under court supervision, weigh in favor of pretrial detention.  With respect to the proposed conditions of release, electronic monitoring devices "can be circumvented" and "rendered inoperative."  *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993).

The Court finds that Defendant is a flight risk and danger who must be detained pending trial, as there are no conditions of release that will reasonably assure the safety of the community or reasonably assure Defendant's appearances as required.

Last, the Court notes that the procedural posture of this case is currently in the pretrial phase, with Defendant and co-defendants continuing to litigate suppression motions and other requests for relief.  As soon as this case is ready for trial and to the extent there is no pretrial disposition, the Court will add the case to its trial calendar and expeditiously advance it to trial.

## **CONCLUSION**

For the reasons stated above, Defendant's motion pursuant to 18 U.S.C. § 3145(b) (Dkt. No. 28) to revoke Magistrate Judge McCarthy's pretrial detention order (Dkt. No. 28, pp. 41-42) is denied.

Defendant shall remain committed to the custody of the Attorney General pursuant to 18 U.S.C. § 3142(e) for confinement in a correctional facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal.

The Attorney General shall afford Defendant a reasonable opportunity for private consultation with counsel.

Finally, the Court directs that on order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States Marshal for the purpose of his appearance in connection with any Court proceeding.

This ruling is without prejudice to Defendant's right to the presumption of innocence, and to his right, pursuant to 18 U.S.C. § 3142(f), to seek reconsideration of his pretrial detention based upon changed circumstances.

**SO ORDERED.**

        __*s/Richard J. Arcara*_____
        HONORABLE RICHARD J. ARCARA
        UNITED STATES DISTRICT COURT

Dated:   November 4, 2021